UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIT RAMESH AGARWAL,

     Petitioner,

v.

ROBERT E. LYNCH, *et al.*,

     Respondents.

Case No. 21-cv-12688
Hon. Matthew F. Leitman

_____/

## <u>OPINION AND ORDER DENYING RESPONDENTS'<br>MOTION TO DISMISS (ECF No. 14)</u>

Petitioner Amit Ramesh Agarwal is a citizen of India.  In October 2021, while Agarwal was present in the United States, officers from United States Immigration and Customs Enforcement ("ICE") took him into their custody, lodged him at the Monroe County Jail, and commenced expedited removal proceedings against him. Agarwal then filed a petition for a writ of habeas corpus in this Court against Respondents Robert E. Lynch, Alejandro Mayorkas, Anthony Blinken, and Merrick Garland. (*See* Pet., ECF No. 1.)  In the petition, Agarwal argued, among other things, that he should immediately be released from custody because (1) he had not, in fact, been ordered removed under a final order of expedited removal and (2) assuming *arguendo* that a final order of expedited removal had been issued against him, the

order was invalid under both the Appointments Clause and the Due Process Clause of the United States Constitution.

On the eve of Agarwal's scheduled removal, he filed an emergency motion for a temporary restraining order barring ICE from removing him. (*See* Agarwal Mot. for TRO, ECF No. 6.)  The Court denied the motion because Agarwal had delayed seeking emergency relief and because he failed to persuade the Court, in the extremely limited period of time available for emergency review of his claims, that he had a substantial likelihood of success on the merits. (*See* Order, ECF No. 12.) A few hours after the Court denied the motion, Agarwal was removed to India.

Respondents have now moved to dismiss all of Agarwal's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and to dismiss one of his claims under Rule 12(b)(6) for failure to state a claim. (*See* Mot. to Dismiss, ECF No. 14.)  Respondents' primary argument is that Congress has sharply limited the grounds on which an immigrant may challenge an expedited removal order in federal court and that Agarwal's claims do not fall within the narrow class of claims that are subject to review.  The motion has been thoroughly briefed by both sides, and both sides presented lengthy oral arguments to the Court at a hearing on Respondents' motion.  Thus, the Court has been able to review the key issues in this case much more carefully than it was previously able to do during

the emergency TRO proceedings.  Having completed that review, and for the reasons

explained below, the Court **DENIES** Respondents' motion to dismiss.

## I

The Court begins with a brief explanation as to how the expedited removal

process differs from the standard removal process and with a brief description of

Congress' effort to limit judicial review of expedited removal orders.

## A

Under the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101 *et

seq.*, all non-citizens "present in the United States who [have] not been admitted or

who arrive[] in the United States … shall be deemed … an applicant for admission"

to this country. 8 U.S.C. § 1225(a)(1).  All such "applicants for admission … shall

be inspected by [an] immigration officer[]." 8 U.S.C. § 1225(a)(3).  In general, "if

the examining immigration officer determines that [an applicant] seeking admission

is not clearly and beyond a doubt entitled to be admitted, the [applicant] shall be

detained" for a hearing before an immigration judge. 8 U.S.C. § 1225(b)(2)(A).

"[A]t that hearing [the applicant] may attempt to show that he or she should not be

removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020).

For example, an applicant "may apply for asylum on the ground that he or she would

be persecuted if returned to his or her home country." *Id.*  "If that claim is rejected

and the [applicant] is ordered removed, the [applicant] can appeal the removal order

to the Board of Immigration Appeals and, if that appeal is unsuccessful, the [applicant] is generally entitled to review in a federal court of appeals." *Id.* "The average civil appeal takes approximately one year.  During the time when removal is being litigated, the [applicant] will either be detained, at considerable expense, or allowed to reside in this country, with the attendant risk that he or she may not later be found." *Id.*

For certain classes of immigrants, Congress has created an expedited removal process.  The criteria for expedited removal are codified in Section 1225(b)(1) of the INA, 8 U.S.C. § 1225(b)(1).  Under that provision, "[a]n applicant is subject to expedited removal if … the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not 'been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility'; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal." *Id.* at 1964–65 (quoting 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(I)–(III)).  "Once 'an immigration officer determines' that a designated applicant" is subject to expedited removal on these grounds, "'the officer [must] order the [applicant] removed from the United States without further hearing or review.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).  An applicant removed under these expedited removal proceedings is deemed "inadmissible" to the United States for a period of at least five years following that removal. 8 U.S.C. § 1182(a)(9)(A)(i).

4

**B**

Congress has substantially limited the authority of federal courts to review orders of expedited removal.  Section 1252(a) of the INA, 8 U.S.C. § 1252(a) ("Section 1252(a)"), strips courts of jurisdiction to review those orders, except for the limited judicial review authorized by Section 1252(e) of the INA, 8 U.S.C. § 1252(e) ("Section 1252(e)").  In *Castro v. United States Department of Homeland Security*, 835 F.3d 422 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit provided a helpful and comprehensive overview of the limitations imposed by Section 1252(a) and the limited review available under Section 1252(e). The Court quotes that overview at length below:

> Section 1252 of Title 8 defines the scope of judicial review for all orders of removal. This statute narrowly circumscribes judicial review for expedited removal orders issued pursuant to § 1225(b)(1). [….] Moreover, except as provided in [Section 1252(e)], [Section 1252(a)] strips courts of jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal regime; and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1)]." *Id.* § 1252(a)(2)(A)(i), (ii) & (iv). Thus, the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under [Section 1252(e)].

Section 1252(e), for its part, preserves judicial review for only a small subset of issues relating to individual expedited removal orders:

> Judicial review of any determination made under [§ 1225(b)(1)] is available in habeas corpus proceedings, but shall be limited to determinations of—
>
> (A) whether the petitioner is an alien,
>
> (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and
>
> (C) whether the petitioner can prove ... that the petitioner is [a lawful permanent resident], has been admitted as a refugee ... or has been granted asylum ....

*Id.* § 1252(e)(2). In reviewing a determination under subpart (B) above—i.e., in deciding "whether the petitioner was ordered removed under [§ 1225(b)(1)]"—"the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." *Id.* § 1252(e)(5).

Section 1252(e) also provides jurisdiction to the district court for the District of Columbia to review "[c]hallenges [to the] validity of the [expedited removal] system." *Id.* § 1252(e)(3)(A). Such systemic challenges include challenges to the constitutionality of any provision of the expedited removal statute or its implementing regulations, as well as challenges claiming that a given regulation is inconsistent with law. *See id.* § 1252(e)(3)(A)(i) & (ii). Nevertheless, systemic challenges must be brought within sixty days after implementation of the challenged statute or regulation. *Id.* § 1252(e)(3)(B); *see also Am.*

> *Immigration Lawyers Ass'n v. Reno*, 18 F.Supp.2d 38, 47
> (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir.
> 2000) (holding that "the 60-day requirement is
> jurisdictional rather than a traditional limitations period").

*Id*. at 426–27.

## II[1]

### A

Agarwal is a native and citizen of India. (*See* Pet. at ¶8, ECF No. 1, PageID.4.) Agarwal came to the United States to attend college, and he graduated from Farleigh Dickinson University in New Jersey. (*See id.* at ¶14, PageID.5.) "[B]eginning in 2009, Mr. Agarwal was the beneficiary of several approved petitions as an 'H-1B' nonimmigrant pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(b) as a noncitizen coming temporarily to the United States to perform services in a specialty occupation. Including a brief period as the 'H-4' nonimmigrant spouse of his wife, Sonal Dugar, pursuant to 8 U.S.C. § 1101(a)(15)(H), Mr. Agarwal remained in H nonimmigrant status for most of the time between 10/01/2009 and 02/23/2019." (*Id.*) During this

---

[1] The facts in this section are taken from Agarwal's habeas petition. Those are the facts that the Court must consider as true when reviewing Respondents' facial attack on subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and their motion to dismiss under Rule 12(b)(6). Respondents have brought additional facts to the Court's attention related to their factual attack on subject-matter jurisdiction. The Court describes and consider those facts in its analysis of Respondents' factual attack below.

time, Agarwal "operated an electronics business, Best Electronics LLC, of which he was a majority owner and also an employee." (*Id.* at ¶15, PageID.5.)

**B**

Agarwal's status as an "H non-immigrant" ended in 2019, and he departed the United States. (*See id.* at ¶17, PageID.6.)  After Agarwal left the country, a federal grand jury charged him "with money laundering in connection with his electronics business." (*Id.* at ¶18, PageID.6.)

"Also in 2019, Mr. Agarwal applied for … an F-2 nonimmigrant visa in order to return to the United States as the spouse of his F-1 nonimmigrant student wife … who was pursuing a master's degree." (*Id.* at ¶19, PageID.6.)  Even though Agarwal had been charged with money laundering that same year, his application for an F-2 non-immigrant visa was granted, and the visa "was issued" to him. (*Id.*)

When Agarwal attempted to return to the United States in December 2019 under his F-2 non-immigrant visa, a Customs and Border Protection ("CBP") officer "purported to cancel" the visa. (*Id.* at ¶20, PageID.6.)  Agarwal was then arrested for money laundering. (*See id.* at ¶21, PageID.6.)  He was "paroled into the United States for prosecution" and released on a $350,000 bond. (*Id.*)  Agarwal's criminal prosecution remained pending for over a year, and he remained on bond in the United States during that time. (*See id.* at ¶22, PageID.7.)

8

On July 15, 2021, "Agarwal pled guilty to conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371." (*Id.* at ¶23, PageID.7.) He was then sentenced "to two months in prison for his conviction, plus two years of supervised release, 200 hours of community service, and a $100 special assessment." (*Id.* at ¶24, PageID.7.)   The federal judge sentencing Agarwal "recommended that Mr. Agarwal not be deported" at the conclusion of his sentence. (*See id.* at ¶26, PageID.7–8.)   Nonetheless, "[f]ollowing the completion of his two-month prison sentence, Mr. Agarwal was not released from custody to complete his supervised release and community service, as [the sentencing judge] had intended." (*Id.* at ¶28, PageID.8.)   "Instead, he was taken into immigration custody" so that he could be removed on an expedited basis. (*Id.*)

## C

Next, ICE Deportation Officer Charles Smith prepared a Notice and Order of Expedited Removal against Agarwal (the "Purported Initial Removal Order"). (*See id.* at ¶¶ 30–32, PageID.8–9. *See also* Purported Initial Removal Order, ECF No. 1-11.)   The Purported Initial Removal Order was dated October 26, 2021. (*See* Purported Initial Removal Order, ECF No. 1-11, PageID.72–73.)   The Purported Initial Removal Order also had a signature line for Smith's supervisor, Acting Assistant Field Office Director Michael Lentz, but that line was blank. (*See id.*, PageID.73.)

9

The Purported Initial Removal Order informed Agarwal that he was "subject to removal from the United States pursuant to section 212(a)(7)(A)(i)(I) of the INA, as 'an immigrant who, at the time of application for admission, [was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.'" (Pet. at ¶31, ECF No. 1, PageID.9, quoting Purported Initial Removal Order, ECF No. 1-11, PageID.74.)  The Purported Initial Removal Order also stated that Agarwal would be barred from admission from the United States for a period of ten years. (*See* Purported Initial Removal Order, ECF No. 1-11, PageID.72.)  But that was wrong.   In fact, Agarwal was subject to only a five-year period of inadmissibility. *See* 8 U.S.C. § 1182(a)(9)(A)(i).

On October 29, 2022, Agarwal, through counsel, "submitted a letter to the Detroit Field Office of ICE Enforcement and Removal Operations requesting that the [Purported Initial Removal Order] be rescinded and that he either be referred to CBP [] for further processing, or allowed to withdraw his application for admission." (Pet. at ¶34, ECF No. 1, PageID.9.)  "In the alternative, the letter proposed that Mr. Agarwal could be placed in removal proceedings before an Immigration Judge under INA § 240, so that he could seek withdrawal of the application for admission or

voluntary departure." (*Id.*, PageID.9–10.)  Agarwal sought this relief so that he could leave the United States voluntarily and avoid the future bar on admission that would be a consequence of his expedited removal.

## D

As of November 17, 2021, Agarwal had not received any response to his October 29 letter.  Nor had he "been referred to CBP for further processing," "been allowed to withdraw his application for admission and depart from the United States voluntarily," or been "placed in removal proceedings before an Immigration Judge." (*Id.* at ¶36, PageID.10.)  Instead, he "remain[ed] confined" at the Monroe County Jail. (*Id.*)

On November 17, 2021, Agarwal filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief in this Court. Agarwal's petition contained three claims for relief, which were captioned as follows: (1) "Detention Without a Final Expedited Removal Order – 8 C.F.R. § 235.3(b)(7)," (2) "Detention Based on Constitutionally Invalid Expedited Removal Issued Order by Government Employee Without Authority – Appointments Clause," and (3) "Deprivation of Liberty Without Due Process of Law – Fifth Amendment." (*Id.*)  The Court will explain the nature of each claim in much more detail below.

As his first request for relief, Agarwal asked the Court to "[o]rder that Respondents release [him] from custody." (*See id.* at ¶61(a), PageID.15.)  He also asked the Court to:

> (b) Order that if CBP does not admit [him] in F-2 status following his release from custody, Respondents shall allow [him] to withdraw his application for admission under INA § 235(a)(4), 8 U.S.C. § 1225(a)(4), and depart from the United States without a removal order, or in the alternative afford [him] removal proceedings before an Immigration Judge under INA § 240, 8 U.S.C. § 1229a;
>
> (c) Declare that the [Purported Initial] Removal Order is not a legally valid and final removal order;
>
> (d) Declare that [his] departure from the United States shall not render him inadmissible under section 212(a)(9)(A) of the INA, 8 U.S.C. § 1182(a)(9)(A), despite the [Purported Initial] Removal Order;
>
> (e) Grant such other and further relief at law and in equity as justice may require;
>
> and (f) Grant attorney's fees and costs of Court to Petitioner under the Equal Access to Justice Act.

(*Id.* at ¶ 61(b)–(f), PageID.15.)

## E

Shortly after filing his petition, Agarwal learned that Respondents planned to "imminently seek" his removal to India. (Agarwal Mot. for TRO, ECF No. 6, PageID.148.)  Therefore, on November 23, 2021, he filed an emergency motion for a temporary restraining order seeking to stop his removal. (*See id.*)  Respondents

filed a response to the motion the next day. (*See* Resp., ECF No. 8.)  Along with that response, counsel for Respondents filed with the Court what Respondents called a "final expedited order of removal" against Agarwal (the "Purported Final Removal Order," collectively with the Purported Initial Removal Order, the "Purported Removal Orders"). (Respondents' Br., ECF No. 8, PageID.166; *see also* Purported Final Removal Order, ECF No. 8-1.)  Unlike the Purported Initial Removal Order, the Purported Final Removal Order appeared to be signed by both ICE agent Charles Smith and his supervisor, Michael Lentz.[2] (*See* Purported Final Removal Order, ECF No. 8-1, PageID.176.)

The Court held two emergency hearings on Agarwal's motion, and it denied his requested relief.  The Court explained on the record that it could not find, in the extremely compressed time available for emergency review, that Agarwal had demonstrated a substantial likelihood of success on the merits.  The Court also noted that Agarwal had delayed in filing his TRO motion and that that delay weighed against the granting of emergency relief.  The Court then memorialized its ruling in a written order.  (*See* Order, ECF No. 12.)  Agarwal was subsequently removed to India pursuant to the Purported Final Removal Order.

_____

[2] The Purported Initial Removal Order and the Purported Final Removal Order also differed in several other, potentially significant, ways.  The Court will discuss those differences and their significance to Respondents' motion to dismiss in more detail below.

**F**

Respondents have now moved to dismiss Agarwal's petition under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mot. to Dismiss, ECF No. 14.)   Respondents first contend that the Court lacks subject-matter jurisdiction over all three of Agarwal's claims.  In the alternative, they argue that if the Court has subject-matter jurisdiction, then the Court should conclude that Agarwal's first claim fails to state a claim on which relief can be granted. (*See id.*) Agarwal opposes Respondents' motion. (*See* Agarwal Resp. to Mot. to Dismiss, ECF No. 15.)  The Court held an in-person hearing on the motion on May 26, 2022.

**III**

The Court begins with the procedural framework applicable to the two grounds on which Respondents seek dismissal.  "Motions to dismiss for lack of subject matter jurisdiction [under Rule 12(b)(1)] fall into two general categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, see *Ohio Nat'l*

*Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**IV**

The Court will examine Respondents' challenges to each claim in Agarwal's petition separately. For the reasons explained below, the Court concludes that Respondents are not entitled to dismissal of any of Agarwal's claims at this time.

**A**

**1**

In Count One of Agarwal's petition, he sought relief under Section 1252(e), the statutory provision that preserves limited judicial review of expedited removal orders. As noted above, Section 1252(e) permits a district court to review, among other things, "whether the petitioner was ordered removed" under 8 U.S.C. § 1225(b)(1). Section 1252(e) further provides that when a district court makes that assessment, its inquiry "shall be limited to whether [an expedited order of removal] in fact was issued and whether it relates to petitioner." 8 U.S.C. § 1252(e).

Agarwal contended in his petition that he was entitled to relief under Section 1252(e) because a final expedited removal order was not in fact issued against him. (*See* Pet. at ¶¶ 37–46, ECF No. 1, PageID.11–13.) Agarwal explained that under 8 C.F.R. § 253.3(b)(7), "an expedited removal order is not final until it has been reviewed and approved by a supervisor."[3] (*Id.* at ¶38, PageID.10.) And he alleged

---

[3] *See* 8 C.F.R. § 235(b)(7) ("Any removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the [INA] must be reviewed by the appropriate supervisor before the order is considered final.")

that certain features of the Purported Initial Removal Order "implie[d]" that it "ha[d] not been reviewed and approved by a supervisor." (*Id.* at ¶42, PageID.11.)  More specifically, Agarwal pointed out that (1) the Purported Initial Removal Order did "not bear the signature of a supervisor," (2) "[t]he box on the [Purported Initial] Removal Order that is to be checked if 'supervisory concurrence was obtained by telephone or other means,'" … [was] not checked," (3) "no other written evidence of supervisory review" of the Purported Initial Removal Order was provided to him, and (4) other documents that were provided to him contained additional errors that called into question whether any of the expedited removal paperwork related to him had been reviewed and approved by a supervisor. (*Id.* at ¶¶ 39–43, PageID.11.) Agarwal therefore insisted that he was being "unlawfully detained … for the purpose of potentially [removing] him from the United States … in the absence of any final order of removal under 8 U.S.C. § 1225(b)," and he sought relief under Section 1252(e) from that "unlawful[]" detention. (*Id.* at ¶46, PageID.12.)

## 2

The Court begins with Respondents' argument that the Court lacks subject-matter jurisdiction over this claim under Section 1252(e).  Respondents characterize this claim as one seeking "review [of] the validity of an expedited removal order that has in fact been issued" (Mot. to Dismiss, ECF No. 14, PageID.223), and they insist that "[t]he Court does not have subject matter jurisdiction to review an issued

17

expedited order of removal for validity based on alleged procedural deficiencies."
(Mot. to Dismiss, ECF No. 14, PageID.226, citing *Castro*, 835 F.3d at 425.) They
highlight that under Section 1252(e), this Court's review is limited to whether an
expedited order of removal "in fact was issued." 8 § U.S.C. 1252(e). And they say
that any review of the validity of the Purported Removal Orders would exceed this
narrow grant of jurisdiction.

To the extent that this is a facial challenge to the Court's subject-matter
jurisdiction, it must fail. As explained above, when reviewing a facial attack, "the
court must take the material allegations of the petition as true and construed in the
light most favorable to the nonmoving party." *Ritchie*, 15 F.3d at 598. But
Respondents' argument does not take Agarwal's allegations as true. Contrary to
Respondents' argument, Agarwal does not allege that the Purported Removal Orders
actually issued but are somehow tainted by a procedural flaw. Instead, Agarwal
claims that the Purported Removal Orders, in fact, were *not* issued because (1)
supervisor review and approval is a condition precedent to the issuance of a final
order of expedited removal, *see* 8 C.F.R. § 235.3(b)(7), and (2) the Purported
Removal Orders were not reviewed and approved by a supervisor. (*See* Pet. at ¶¶
39–46, ECF No. 1, PageID.11–12; Agarwal Resp. to Mot. to Dismiss, ECF No. 15,
PageID.260–261.) Indeed, Agarwal alleged that ICE detained him and proceeded
against him "in the absence of any final order of removal." (Pet. at ¶46, ECF No. 1,

PageID.12.)   All of these allegations bring Agarwal's claim squarely within the jurisdiction granted by Section 1252(e).  Thus, the Court rejects Respondents' facial challenge to the Court's subject-matter jurisdiction over Agarwal's Section 1252(e) claim.

To the extent that Respondents mount a factual challenge to the Court's subject-matter jurisdiction over Agarwal's Section 1252(e) claim, that challenge cannot be resolved on the current record before the Court.  As noted above, Respondents' jurisdictional challenge rests upon their factual assertion that a final order of expedited removal was actually issued against Agarwal before he was removed.  They insist that that fact is essentially indisputable because (1) the Purported Final Removal Order was filed with this Court before Agarwal was removed and (2) that order bore the signature of Lentz, an ICE supervisor who was authorized under 8 C.F.R. § 235.3(b)(7) to approve final orders of expedited removal.  But even though the Purported Final Removal Order purported to bear Lentz's signature, the Court is not yet prepared to find that that signature is authentic and/or that Lentz reviewed and approved the order, as Respondents contend.  Simply put, the evidence before the Court related to the issuance of the Purported Final Removal Order is marked by irregularities that raise questions concerning the veracity and reliability of both the version of events offered by Respondents and the authenticity of the documentary evidence proffered by Respondents, including the

Purported Final Removal Order.  Thus, the Court cannot yet conclude that the Purported Final Removal Order was "issued."

The circumstances that raise questions concerning the reliability of Respondents' version of events and the authenticity of the documents offered by Respondents include the following:

- In the "Certificate of Service" in the Purported Initial Removal Order, the signature line for the "immigration officer" is signed "refused." (Purported Initial Removal Order, ECF No. 1-11, PageID.73.) The "Certificate of Service" in the Purported Final Removal Order contains what appears to be white-out fluid over that signature line and includes the signature of ICE Agent Smith where the word "refused" used to be. (*See* Purported Final Removal Order, ECF No. 8-1, PageID.176.) The apparent use of white out on an official order raises obvious questions.

- There is a notation written in blue pen on the last page of the Purported Final Removal Order that says "*REFUSED* Received by Non-Citizens." (*Id*.) But ICE Agent Smith says that he provided the order only to Agarwal, not to multiple "non-citizens." (ECF No. 11, PageID.189.)  The reference to "non-citizens" *plural* creates additional uncertainty about the reliability of Smith's account of the relevant events.

- In these proceedings, ICE Agent Smith submitted a sworn declaration dated November 24, 2021 (the "First Smith Declaration"). (*See* First Smith Declaration, ECF No 11.)  The purpose of the First Smith Declaration was to "explain Agarwal's order of removal." (*Id.* at ¶3, PageID.188.)  But the First Smith Declaration creates additional confusion.

  o Smith attests that he "served" Agarwal with the Purported Final Removal Order on October 27, 2021. (*Id.* at ¶¶ 7–8, PageID.189.)  But the Certificate of Service for the Purported Final Removal Order reflects that it was served the day before,

October 26, 2021. (*See* Purported Final Removal Order, ECF No. 8-1, PageID.176.)

o  Smith attempts to explain the inconsistency in the service dates by saying that he "re-used the prior certificate of service dated October 26, 2021." (First Smith Decl. at ¶8, ECF No. 11, PageID.189.)  But there is no dated "prior certificate of service" in the record.  The only other certificate of service in this record is the one included in the Purported Initial Removal Order, but that certificate of service was undated. (*See* Purported Initial Removal Order, ECF No. 1-11, PageID.73.)

o  Finally, Agarwal vigorously disputes that Smith served him with the Purported Final Removal Order, as Smith contends in the First Smith Declaration.  Agarwal avers in his own sworn declaration that he "never received" the signed Purported Final Removal Order from Smith. (Agarwal Decl. at ¶9, ECF No. 15-2, PageID.282.)

• ICE Agent Smith also submitted a second sworn declaration in these proceedings dated January 6, 2022 (the "Second Smith Declaration"). (*See* Second Smith Declaration, ECF No. 14-1.)  Like the First Smith Declaration, the purpose of the Second Smith Declaration was to "explain Agarwal's order of removal." (*Id.* at ¶3, PageID.238.) But the two explanations differ in several potentially significant ways, and these differences raise additional concerns about the reliability of Smith's statements to the Court.

o  First, in the Second Smith Declaration, Smith appears to abandon his explanation, recounted above, about his "re-use" of the "prior certificate of service."  Indeed, the Second Smith Declaration omits any explanation at all regarding the discrepancy between the date of service on Purported Final Removal Order (October 26) and the date Smith says he provided the Purported Final Removal Order to Agarwal (October 27).

o  Second, unlike in the First Smith Declaration, Smith does not attempt to explain in the Second Smith Declaration why the Purported Final Removal Order contains white-out fluid and

21

why he replaced the word "refused" with his signature.  There is no explanation in the Second Smith Declaration that could explain why the Purported Final Removal Order has white-out fluid.

    o   Third, in the First Smith Declaration, Smith explained why he provided the Purported Initial Removal Order to Agarwal even though it was not signed by a supervisor.[4] That explanation is omitted entirely from the Second Smith Declaration.  The Second Smith Declaration does not acknowledge the Purported Initial Removal Order was unsigned.

    o   Finally, the Second Smith Declaration says, for the first time, that ICE Deportation Officer Aaron Zylstra was present when Smith met with Agarwal on October 26, 2021, and that Smith provided additional removal forms to Agarwal on October 26 – forms that Smith did not mention in the First Smith Declaration. Officer Zylstra has not submitted a declaration or affidavit confirming Smith's version of events.  These aspects of the Second Smith Declaration raise additional questions about the reliability of the sworn statements Smith has made to the Court.

- ICE Supervisor Lentz has not presented any evidence to the Court, such as a declaration or affidavit, in which he confirms that he reviewed and approved Agarwal's removal and, if he did so, when he approved that removal.

Given these ambiguities, inconsistencies, and gaps in the record, the Court cannot conclude that the Purported Final Removal Order was reviewed, approved, and issued before Agarwal's removal from the United States.[5]

---

[4] Smith explained that the Purported Initial Removal Order "did not include the signature of my supervisor because review was not complete. I gave Agarwal a copy of the unsigned [Purported Initial Removal Order] at his request because he asked for [that form] in order to inform his attorney what immigration charges were being relied on for his removal." (First Smith Declaration at ¶5, ECF No. 11, PageID.188.)

[5] Respondents argue that under the "presumption of regularity," the Court must, "absent evidence to the contrary […] presume that the agency followed its regulatory

Under these circumstances, the Court chooses to exercise its discretion to permit some limited jurisdictional discovery related to whether the Purported Final Removal Order was in fact issued in the manner claimed by Respondents. *See*, *e.g.*, *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2015) (explaining that "[w]hen a defendant challenges a court's actual subject matter jurisdiction, as opposed to the sufficiency of the allegations of subject matter jurisdiction in the complaint, the parties must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction"); *Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002) (explaining that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion" and holding that "district court improperly decided" whether jurisdiction existed under Rule 12(b)(1) "without allowing limited discovery"); *Harty v. West Point Reality, Inc.*, 28 F.4th 435, 441–442 (2d Cir. 2022) (noting that "Supreme Court caselaw makes clear that district courts have broad discretion when determining how to consider challenges to subject matter jurisdiction" and district courts have "broad discretion whether to allow discovery as to facts bearing on jurisdiction"). The Court will convene a status conference

procedures and provided Agarwal with a copy of his expedited order of removal after supervisor approval was obtained." (Mot. to Dismiss, ECF No. 14, PageID.231–232). But, here, Agarwal *has* identified "evidence to the contrary" – namely all of the circumstantial evidence described above.

with counsel to chart the course of that discovery.  And when that discovery is completed, the Court will discuss with counsel whether to hold an evidentiary hearing on the issue of whether the Purported Final Removal Order was issued as alleged by Respondents. [6] *See Ohio Nat. Life*, 922 F.2d at 325 (explaining that a district court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."). *See also* 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack" to the court's jurisdiction, the court "has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

### 3

Finally, Respondents argue that even if the Court has subject-matter jurisdiction over Agarwal's claim under Section 1252(e), the Court should nonetheless dismiss that claim because it fails to state a viable claim for relief. (*See*

---

[6] Agarwal argues that even if the Purported Final Removal Order was reviewed and approved by a supervisor prior to his removal, the order was not "issued" because it was presented to him, for the first time, when Respondents' counsel filed it with the Court in this action. (*See* Agarwal Resp. to Mot. to Dismiss, ECF No. 15, PageID.259–261.)  Agarwal says that filing the Purported Final Removal Order in litigation cannot constitute issuance of the order.  But the Court need not reach that alternative argument unless and until it determines whether the Purported Final Removal Order was reviewed and approved in the first instance.  The Court will address Agarwal's alternative argument only if it first determines that the Purported Final Removal Order was reviewed and approved by a supervisor.

24

Mot. to Dismiss, ECF No. 14, PageID.231–232.) But this argument fails for the same reason that Respondents' facial attack on the Court's subject-matter jurisdiction over the claim fails: namely, Agarwal's petition plausibly alleged that he was detained and subjected to expedited removal proceedings even though a final expedited removal order had not been issued, and that is enough to state a viable claim under Section 1252(e). For that reason, the Court denies Respondents' motion to dismiss Agarwal's Section 1252(e) claim under Rule 12(b)(6).

## B

### 1

The Court next turns to Count Two of Agarwal's petition. In that Count, Agarwal sought a writ of habeas corpus under 28 U.S.C. § 2241. He alleged that he was entitled to habeas relief because he was being held "in custody for the purpose of removing him under [an expedited removal order] issued by government employees without the constitutional authority to issue" such an order. (Pet. at ¶51, ECF No. 1, PageID.13.) He claimed that his detention thus violated the Appointments Clause of the United States Constitution. (*See id*.) In support of his Appointments Clause claim, Agarwal alleged that "[m]ere employees of the federal government, who are not appointed according to the procedures" described in the Appointments Clause, "may not occupy continuing positions in which they exercise significant authority under the laws of the Unites States." (*Id.* at ¶48, PageID.12,

25

citing *Lucia v. SEC*, 138 S.Ct. 2044, 2051–54 (2018).)  He then alleged that "[t]he ICE officers who issued the [Purported Initial] Removal Order, as well as the CPB officer who purported to cancel [his] nonimmigrant visa, were mere employees of the federal government not properly appointed as either principal or inferior officers [under the Appointments Clause]," and he claimed that [they were] not constitutionally eligible to exercise the significant authority that inheres in the process of issuing a removal order." (*Id.* at ¶49, PageID.12–13.)

## 2

### a

In their motion to dismiss, Respondents first lodge a facial attack on the Court's subject-matter jurisdiction over Agarwal's Appointments Clause claim. They primarily argue that (1) Section 1252(a) deprives the Court of subject-matter jurisdiction to adjudicate any challenge to an expedited removal order that is not based upon one of the narrow grounds identified in Section 1252(e), and (2) since Agarwal's Appointments Clause claim is not based upon one of the grounds listed in Section 1252(e), the Court lacks subject-matter jurisdiction to review that claim. (*See* Mot. to Dismiss, ECF No. 14, PageID.232–234.)

The Court disagrees.  As noted above, Agarwal brings his Appointments Clause claim in a petition for a writ of habeas corpus, and the Suspension Clause of

the United States Constitution precludes Section 1252(a) from stripping this Court of jurisdiction to address a petition presenting that claim.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. "To determine whether a jurisdiction-stripping statute violates the [Suspension] Clause, [courts] proceed … through the two-step analysis that the Supreme Court announced in *Boumediene v. Bush*, 553 U.S. 723 (2008)." *Osorio-Martinez v. Attorney General*, 893 F.3d 153, 166 (3d Cir. 2018). Courts "first determine whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention." *Id.* (internal citation and quotation marks omitted). "Then, if the petitioner is not prohibited from invoking the Suspension Clause, [courts] turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal)." *Id.* (internal citation and quotation marks omitted). In other words, "the question becomes whether the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus." *Boumediene*, 553 U.S. at 771.

Agarwal's allegations satisfy both prongs of the *Boumediene* test. First, Agarwal sufficiently alleged that he was not prohibited from invoking the

Suspension Clause.  As the Third Circuit has explained, a habeas petitioner who has entered the United States may invoke the Suspension Clause so long as he has "developed … 'substantial connections with this country.'" *Osorio-Martinez*, 893 F.3d at 167–68 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)).  Agarwal alleged that he had such connections.  For instance, he alleged that he lawfully resided in this country for nearly a decade before departing briefly in 2019, and that when he returned to the United States later that same year, he did so lawfully pursuant to a F-2 non-immigrant visa that had been issued to him.  These allegations, which the Court must accept as true for purposes of Respondents' facial attack, are sufficient to remove Agarwal from the class of persons who are prohibited from invoking the Suspension Clause.  Indeed, Respondents do not contend (at least not yet) that Agarwal is within the class of persons who may not invoke the Suspension Clause.

Second, Section 1252(e) "does not provide an adequate and effective alternative to habeas review." *Id.* at 177 (internal quotation marks omitted).  That statute gives Agarwal no opportunity whatsoever to present his Appointments Clause challenge to either the Purported Initial Removal Order or the Purported Final Removal Order.  On the contrary, it expressly precludes him from asserting that challenge.  Thus, it is not an adequate and effective alternative to habeas review.

28

The Third Circuit reached the same conclusion in *Osorio-Martinez*.  In that

decision, the Third Circuit explained:

> In *Boumediene*, the Supreme Court took care to explain that habeas review is "most pressing" in the case of executive detention, as opposed to where "relief is sought from a sentence that resulted from the judgment of a court of record." *Boumediene*, 553 U.S. at 782-83, 128 S.Ct. 2229. For the writ to be effective in such a case, "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Id.* at 783; *see also INS v. St. Cyr,* 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). More specifically, the Court declared it "uncontroversial ... that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene*, 553 U.S. at 779 (quoting *St. Cyr*, 533 U.S. at 302).
>
> But the INA's jurisdiction-stripping provisions do not provide even this "uncontroversial" baseline of review. Instead, § 1252(e)(2) permits habeas review of expedited removal orders as to only three exceptionally narrow issues: whether the petitioner (1) is an alien, (2) was "ordered removed" (which we have interpreted to mean only "whether an immigration officer issued that piece of paper [the removal order] and whether the Petitioner is the same person referred to in that order," *Castro*, 835 F.3d at 431 (internal citation omitted)), and (3) can prove his or her lawful status in the country. 8 U.S.C. § 1252(e)(2). It also explicitly precludes review of "whether the alien is actually inadmissible or entitled to any relief from removal," *id.* § 1252(e)(5), and of "any other cause or claim arising from or relating to the implementation or operation of" the removal order, *id.* § 1252(a)(2)(A)(i).

> Together, these provisions prevent us from considering
> "whether the expedited removal statute was lawfully
> applied to petitioners," *Castro*, 835 F.3d at 432 (quoting
> *Am.-Arab*, 272 F.Supp.2d at 663), and thus preclude
> review of "the erroneous application or interpretation of
> relevant law," *Boumediene*, 553 U.S. at 779 (quoting *St.
> Cyr*, 533 U.S. at 302). That, however, is the
> "uncontroversial" minimum demanded by the Great Writ.

*Id.* For much the same reasons, the Court concludes that Section 1252(e) does not

provide an adequate substitute for habeas review because it prevents the Court from

considering Agarwal's Appointments Clause claim.   Section 1252(a) therefore

cannot strip the Court of jurisdiction to hear Agarwal's claim for habeas relief.[7]

**b**

Respondents offer two additional arguments as to why the Court lacks

jurisdiction to hear Agarwal's habeas claim based upon the Appointments Clause.

Neither persuades the Court that it may not hear the claims.

**i**

First, Respondents argue that the United States District Court for the District

of Columbia has exclusive jurisdiction over Agarwal's Appointments Clause claim.

In support of this argument, Respondents rely on Section 1252(e)(3) of the INA, 8

---

[7] It is possible that during discovery, Respondents could discover and/or develop facts showing that, contrary to Agarwal's allegations, (1) he lacks substantial contacts to this country and/or (2) did not have a valid F-2 visa when he returned to this country in 2019, and that he thus does fall within the class of persons who are prohibited from invoking the Suspension Clause.  If Respondents wish to present that argument, they may do so on summary judgment.

30

U.S.C. § 1252(e)(3) ("Section 1252(e)(3)").  That statute "provides jurisdiction to the district court for the District of Columbia to review 'challenges [to the] validity of the [expedited removal] *system*.'" *Castro*, 835 F.3d at 427 (quoting 8 U.S.C. § 1252(e)(3)(A)) (emphasis added).[8]  "Such challenges include challenges to the constitutionality of any provision of the expedited removal statute or its implementing regulations, as well as challenges that a given regulation is inconsistent with law." *Id.*  Section 1252(e)(3) further provides that any systemic challenges to the expedited removal statute and/or implementing regulations "must

---

[8] Section 1252(e)(3) provides in relevant part as follows:

(A) In General

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of –

    (i)    whether such section, or any regulation issued to implement such section, is constitutional; or

    (ii)    (whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

(B) Deadlines for bringing actions

Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

be brought within sixty days after implementation of the challenged statute or regulation." *Id.*   Respondents contend that this Court may not hear Agarwal's Appointments Clause claim because it is a "systemic challenge" that Agarwal (1) was required to bring in the United States District Court for the District of Columbia and (2) failed to bring within 60 days of the implementation of the expedited removal statute and regulations. (Mot. to Dismiss, ECF No. 14, PageID.234.)

The Court disagrees with Respondents' characterization of Agarwal's Appointments Clause claim as a "systemic challenge."   Agarwal is not challenging the statutory and/or regulatory system for expedited removals *writ large*.   He does not contend that the system necessarily violates the Appointments Clause.   Instead, he alleged only that Respondents violated the Appointments Clause when they authorized ICE employees Smith and/or Lentz to issue expedited removal orders. And he acknowledges that the Respondents *could have* implemented the expedited removal statute and its regulations consistent with the Appointments Clause – by, for instance, designating "properly appointed inferior officers" to review and approve expedited removal orders. (Agarwal Resp. to Mot. to Dismiss., ECF No. 15, PageID.269.)   For these reasons, Agarwal's Appointment Clause claim is not the type of "systemic challenge" over which the United States District Court for the District of Columbia has exclusive jurisdiction and which had to have been brought

within 60 days of the enactment of the expedited removal statute and implementing regulations.[9]

**ii**

Respondents next argue that the Court must dismiss Agarwal's Appointments Clause claim because the sole relief available through a petition for a writ of habeas corpus – the vehicle he uses to press the claim – is "simple release," but Agarwal "does not seek 'simple release,' and in fact, no longer seeks release at all [since he has now been removed to India]." (Respondents Reply Br., ECF No. 16, PageID.292–293.)  This argument rests upon the Supreme Court's decision in *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959 (2020). (*See id.*, discussing *Thuraissigiam* at length).

In *Thuraissigiam,* a citizen of Sri Lanka was stopped by border patrol agents within 25 yards of the United States border, placed into expedited removal proceedings, and later ordered removed.  Thereafter, he filed a petition for a writ of habeas corpus.  He alleged that "immigration officials deprived him of 'a meaningful

---

[9] Even if Agarwal's Appointments Clause claim was properly deemed a "systemic challenge" under Section 1252(e)(3), it is difficult to see how that statute's sixty-day limitations period for bringing a claim could reasonably be applied to Agarwal.  He was not subject to expedited removal proceedings during the sixty-day window following implementation of the expedited removal statute and regulations, and thus during that time frame he would have lacked standing to bring a claim challenging the system. *See Castro*, 835 F.3d at 427 n. 5 (expressing doubt that sixty-day limitations period could be applied to habeas petitioners whose claims arose "years" after that deadline expired).

33

opportunity to establish his claims" that he would be persecuted if returned to Sri Lanka and that he was therefore eligible for asylum. *Id.* at 1967–68. But he did not seek release from custody. *See id.* Indeed, "[h]is petition made no mention of release from custody." *Id.* at 1968. Instead, he sought only a court order "directing [the Department] to provide [him] a new opportunity to apply for asylum and other applicable relief." *Id.* The district court dismissed the petition. It held that Section 1252(a) stripped it of jurisdiction to hear the claims in the petition because they exceeded the limited grounds of review permitted under Section 1252(e). *See id.* The court also rejected the petitioner's claim that the Suspension Clause authorized the court to hear the claims notwithstanding the limitations in Section 1252(e). *See id.* The Ninth Circuit reversed and held that the Suspension Clause did override the jurisdictional limitations in Section 1252(e) and that the district court should have adjudicated the petitioner's habeas claims.

The Supreme Court then reversed the Ninth Circuit. It held that the district court properly dismissed the petitioner's habeas claims because petitioner failed to show "that the writ of habeas corpus was understood at the time of the adoption of the Constitution to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Id.* at 1969. Instead, "[t]he writ simply provided a means of contesting the lawfulness of restraint and securing release." *Id.* Since the petitioner "did not ask to be released,"

he could not proceed "through habeas." *Id.* at 1969–70. The lack of a request for release was the key to the Supreme Court's ruling. Indeed, the Supreme Court noted the lack of such a request at least seven different times. *See id.* at 1969–1971.

Respondents say that Agarwal is in the same position as the petitioner in *Thuraissigiam* because, since Agarwal has already been removed, he can no longer seek "simple release." Respondents further note that Agarwal's remaining requested relief – including, for instance, an "[o]rder that if CBP does not admit [Agarwal] in F-2 status following his release from custody, Respondents shall allow [him] to withdraw his application for admission" and a declaration that Agarwal's "departure from the United States [does] not render him inadmissible under section 212(a)(9)(A) of the INA, 8 U.S.C. § 1182(a)(9)(A)" (Pet. at ¶¶ 61(b)–(f), ECF No. 1, PageID.15)) – far exceeds "simple release". Thus, Respondents argue, *Thuraissigiam* requires dismissal of Agarwal's habeas claim.

But there is a critical distinction between *Thuraissigiam* and this case. Unlike the petition in *Thuraissigiam,* Agarwal's petition *did* seek "simple release." In fact, that was the very first type of relief that Agarwal requested. (*See* Pet. at ¶61(a), ECF No. 1, PageID.15.) Thus, Agarwal's petition contained the element that the petition in *Thuraissigiam* was missing – the element that the Supreme Court identified as essential to a viable habeas claim.

Moreover, the Court does not read *Thuraissigiam* to require dismissal of a habeas petition that *does* seek simple release if the petition happens to couple that request with requests for additional, broader relief.[10] Instead, *Thuraissigiam* requires dismissal of a habeas petition that does *not* seek simple release at all. Since Agarwal did seek simple release, *Thuraissigiam* does not require the Court to dismiss his Appointments Clause claim.

That Agarwal has been released from custody such that the Court can no longer grant his request for "simple release" does not change the result here. "Ordinarily, the subject matter jurisdiction of a court is tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked." *In re Lewis*, 398 F.3d 735, 743 (6th Cir. 2005). And here, when Agarwal filed his petition, it did contain a request for simple release. Thus, when the rule in *Thuraissigiam* is applied to the proper point in time – the filing of the petition – it does not require dismissal of Agarwal's habeas petition.

---

[10] It may be that *Thuraissigiam* precludes the Court from granting that portion of Agarwal's request for habeas relief that goes beyond attacking the validity of the orders that caused his detention. For instance, *Thuraissigiam* may prevent the Court from ordering Respondents to allow Agarwal to withdraw his application for admission. But that does not mean that *Thuraissigiam* requires outright dismissal of the entire petition. (The Court will address the scope of available habeas relief at a later point in this action.)

Furthermore, it is settled habeas law that a district court retains jurisdiction to grant habeas relief where (1) at the time the petitioner filed the petition, he was in custody and sought release from custody, (2) the petitioner was released from custody while his petition was pending, and (3) the order that caused his wrongful custody imposes continuing adverse collateral consequences. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  This general rule of habeas procedure applies to habeas petitions filed in the immigration context. *See, e.g., See Roman v. Ashcroft*, 340 F.3d 314, 327 (6th Cir. 2003) (explaining that even after a habeas petitioner has been released from custody, a court retains jurisdiction to grant relief "as long as [a] petitioner continues to suffer actual collateral consequences of his removal" and holding that petitioner would "not be deprived of his opportunity to seek habeas corpus relief even if he is removed prior to a court's resolution of his petition"); (internal quotation marks and citation omitted); *Chong v. District Director, I.N.S.*, 264 F.3d 378, 383–86 (9th Cir. 2001) (holding that where immigration order that caused petitioner's custody also imposed post-release collateral consequences on petitioner, court had jurisdiction to entertain habeas petition attacking order even after petitioner's release from custody).  Here, the Purported Final Removal Order imposed adverse collateral consequences upon Agarwal that continue today.  In particular, the order deemed him inadmissible to the United States for a period of five years. *See* 8 U.S.C. § 1182(a)(9)(A)(i).  Those consequences are sufficient to

give this Court continuing jurisdiction over Agarwal's habeas claim attacking the validity of the Purported Removal Orders under the Appointments Clause. *See Chong, supra* (holding that even after petitioner's release from custody, court had jurisdiction to review claims in habeas petition challenging removal order where the removal order resulted in petitioner's "inability to reenter for ten years after her deportation").

For all of these reasons, the Court concludes that it does have subject-matter jurisdiction over Agarwal's claim seeking habeas relief based upon Respondents' alleged violation of the Appointments Clause.

## C

### 1

Finally, in Count Three of his petition, Agarwal sought habeas relief under 28 U.S.C. § 2241 on the ground that that he was deprived of his liberty without due process of law. (*See* Pet. at ¶¶ 52–60, ECF No. 1, PageID.13–15.)  In this Count, Agarwal asserted that "[g]iven [his] past nonimmigrant admissions into the United States, his past lengthy presence in the United States in nonimmigrant H-1B and H-4 status, and his parole into the United States in December 2019, [he] has greater due process rights under the Fifth Amendment than would a noncitizen just arriving from outside the United States for the first time and seeking admission." (*Id.* at ¶54, PageID.13.)  He then claimed that Respondents deprived him of due process by,

among other things, confining him at the Monroe County Jail pursuant to a removal order without providing "any review [that order] by a neutral adjudicator" and/or a "bond hearing." (*Id.* at ¶¶ 56–59, PageID.14.)  In Agarwal's words, his "confinement in the Monroe County Jail […] following the conclusion of his lawfully imposed sentence of imprisonment, pending execution of [his removal], constitute[d] deprivation of liberty without due process of law in violation of the Fifth Amendment." (*Id.* at ¶60, PageID.14-15.)

**2**

Respondents assert that the Court lacks subject-matter jurisdiction over Agarwal's due process claim for at least two reasons. (*See* Mot. to Dismiss, ECF No. 14, PageID.234–235.)  Neither persuades the Court that it lacks jurisdiction.

First, Respondents contend that Section 1252(a) strips the Court of jurisdiction to hear the claim. (*See id*.)  But for the same reasons (explained above) that the Suspension Clause precludes Section 1252(a) from stripping this Court of jurisdiction to hear Agarwal's Appointments Clause claim, it precludes Section 1252(a) from divesting the Court of jurisdiction to hear Agarwal's due process claim.

Second, Respondents argue that Agarwal's due process claim is the type of "systemic" challenge that had to have been brought in the United States District Court for the District of Columbia within sixty days after implementation of the

39

expedited removal statute. (*See id.* citing 8 U.S.C. § 1252(e)(3).)  Again, the Court disagrees.  As Agarwal accurately notes, his due process claim "does not assert that expedited removal violates the Due Process Clause systematically as applied to all noncitizens, but that it does so as applied to his particular factual circumstances." (Agarwal Resp. to Mot. to Dismiss, ECF No. 15, PageID.271–272.)  Moreover, Agarwal was not aggrieved by the expedited removal system within the first sixty days of its implementation, and thus he could not have brought a claim challenging the system within that 60-day window. *See Castro*, 835 F.3d at 427 n. 5 (expressing doubt that sixty-day limitations period could be applied to habeas petitioners whose claims arose "years" after that deadline expired).  For these reasons, the Court declines to dismiss Agarwal's due process claim on the basis that it is a systemic challenge to the expedited removal system that had to be been brought in the District Court for the United States District of Columbia within sixty days of the implementation of the statute.

Finally, even though Respondents do not seek dismissal of Agarwal's due process claim under Rule 12(b)(6) in their motion, they appear to argue in their reply that Agarwal has failed to state a viable due process claim.  They rest this line of argument on *Thuraissigiam*. (*See* Respondents Reply Br., ECF No. 16, PageID.293–295.)  They contend that "Agarwal, like the petitioner in *Thuraissigiam*, [was] an applicant for initial entry because he lacked a valid entry document." (*Id.*,

PageID.294.)  And they say that under *Thuraissigiam*, "[f]or non-citizens seeking initial entry, there is 'no entitlement to procedural rights other than those afforded by statute.'" (*Id.*, PageID.293–294, quoting *Thuraissigiam*, 140 S.Ct. at 1964.) Thus, according to Respondents, "Agarwal [was] only entitled to the due process provided under § 1252(e), and nothing more." (*Id.*)

The Court rejects this argument because it does not accept Agarwal's allegations as true – as an attack under Rule 12(b)(6) must do.  Contrary to the premise underlying Respondents' argument, Agarwal alleged that he *did* arrive with a valid entry document – namely a validly issued F-2 non-immigrant visa. (*See* Pet. at ¶¶ 19, 55, ECF No. 1, PageID. 6, 13–14.)  He also alleged that he had substantial historical ties to this country. (*See id.* at ¶¶ 14–15, PageID.5.)  These allegations are sufficient to defeat Respondents' contention that Agarwal had no due process rights beyond those accorded by Section 1252(e). *See Thuraissigiam,* 140 S.Ct. at 1363–64 (acknowledging that applicants for admission into the United States "who have established connections in this country have due process rights in deportation proceedings").[11] *See also Hassoun v. Seals*, 469 F.Supp.3d 69, 83 n.8 (W.D.N.Y.

---

[11] During discovery, Respondents may, of course, develop facts supporting their argument that Agarwal arrived without a valid entry document, and they may also attempt to develop a record that casts doubt on whether his ties to this country are substantial.  And on summary judgment, they may argue that the undisputed facts demonstrate that under *Thuraissigiam,* Agarwal had no due process protections beyond Section 1252(e) when he arrived back in the United States and was taken into custody in 2019.

2020) ("The petitioner in *Thuraissigiam* had not effected an entry into the United States and the majority opinion concluded that he accordingly was not entitled to any process beyond that provided for by statute. 140 S. Ct. at 1981–83. *Thuraissigiam* says nothing about the process due to an individual like Petitioner, who has been present in the United States for more than 30 years and who is seeking not to be allowed into this country in the first instance, but to be freed from detention within it"), vacated on other grounds, 976 F.3d 121 (2d Cir. 2020); *Munoz v. United States Department of State*, 526 F.Supp.3d 709, 724 n.8 (C.D. Cal. 2021) (explaining that *Thuraissigiam* and similar cases "draw a distinction between non-citizens seeking *initial* entry and those in deportation proceedings who have established connections in the United States," and rejecting reliance on *Thuraissigiam* because the petitioner "had already 'established connections in this country' while living here for ten years").

## V

For all of the reasons explained above, Respondents' motion to dismiss (ECF No. 14) is **DENIED**.  The Court will now hold a status conference with the parties to discuss next steps in this action, including a period for limited jurisdictional and/or other discovery. **IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  July 6, 2022          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing  document was served upon the parties and/or counsel of record on July 6, 2022, by electronic means and/or ordinary mail.

<u>s/Holly A. Ryan</u>
Case Manager
(313) 234-5126